**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**WILLIAM KEITH WININGEAR, et al,**

    **Plaintiffs,**

**v.**                              **Civil Action No. 2:12cv560**

**CITY OF NORFOLK, VIRGINIA,**

    **Defendant.**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
CONDITIONAL COLLECTIVE ACTION CERTIFICATION PURSUANT TO
29 U.S.C. §216(b) and PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
PURSUANT TO FED. R. CIV. P. 23**

The Plaintiffs, William Keith Winingear, et al, individually, and on behalf of all other similarly situated current and former non-exempt Norfolk law enforcement officers ("Plaintiffs"), by counsel, state as follows in support of Plaintiffs' Motion for Conditional Collective Action Certification Pursuant to 29 U.S.C. §216(b) and Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23:

## I.    <u>INTRODUCTION</u>

This is an action for police overtime brought under the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §201, et seq. and Virginia Code §9.1-700, et seq. ("Virginia gap time statute" or "gap time statute"). Applied together, as Judge Hudson recently determined that they must be, these statutes require that all Virginia hourly law enforcement officers in police departments employing more than 100 officers receive overtime pay at time and one-half of their regular hourly rate for all hours worked in excess of their regular recurring work schedules. In addition, the gap time statute requires that all paid hours in a work period (e.g., paid time off, vacation, sick leave, etc.) be counted the same as time actually worked for

overtime pay purposes. The intent of the Commonwealth of Virginia to confer upon and to defend this benefit for law enforcement officers is clear from the extant case law interpreting the statute, the Virginia Attorney General's communications with the undersigned counsel regarding their intent to intervene in this action as well as a plain reading of the gap time statute itself.

This motion seeks conditional certification and notice under the FLSA for Count I and certification of the Virginia gap time claim, set forth at Count II, as a class action under Fed. R. Civ. P. 23. The Rule 23 motion was originally asserted in the Complaint and is renewed now for the Virginia gap time claim only. The Plaintiffs have developed a computer program that efficiently calculates amounts owed under the gap time statute for each current and potential plaintiff. The class easily meets the requirements of numerosity, typicality, commonality, predominance, superiority, manageable proof of damages and adequate representation required under Rule 23.

## II.    STATUS OF DISCOVERY

The parties were permitted to commence discovery in June of this year. Each side served the other with interrogatories and requests for production as soon as they were able. The City changed their computerized personnel management system in the summer. It was a preplanned event, unrelated to this litigation. While the City has acted in good faith in communicating with Plaintiffs' counsel and their experts, Plaintiffs do not yet have the payroll and personnel data necessary to perform calculations of overtime owed. Plaintiffs have usable payroll data for three officers. Plaintiffs are informed by Defendant that this data transfer will take place in the very near future. While the parties still have four and a half months to complete discovery, largely because of the delay in transferring data, no depositions have yet been taken and interrogatories have not been answered by either side.

### III.     PROCEDURAL POSTURE AND FACTS

The Plaintiffs are current and former law enforcement officers[1] employed by the City of Norfolk, Virginia Police Department ("NPD") who have a filed a two-count complaint against the Defendant asserting overtime claims under the FLSA and the Virginia gap time statute. Winingear Dec. ¶4 (Ex. 1); Gibson Dec. ¶3 (Ex. 2). Pursuant to 29 U.S.C. §216(b), the FLSA's "collective action" provision, one or more employees may bring an action for overtime compensation "for and in behalf of himself or themselves and other employees who are similarly situated." Under this provision, those employees who wish to participate in a collective action under the FLSA must affirmatively "opt in" by giving written consent to join in the action as a party.

Plaintiffs incorporate into this Memorandum by reference all allegations set forth in their Complaint. The Defendant admits that all of the Plaintiffs, and those similarly situated to them, are hourly employees who are not exempt from coverage under the FLSA. Defendant's Answer ¶15(Doc. 13). The Defendant further admits that it has employed, and continues to employ, Plaintiffs and those similarly situated in duties that include "maintaining the peace, maintaining law and order, protecting the citizens of Norfolk and investigating crimes and/or citizen complaints." Answer ¶17 (Doc. 13). The Defendant admits that the Plaintiffs "were generally employed to work one hundred sixty (160) hours during a twenty-eight (28) day work period or, in some cases, a forty (40) hour week every seven (7) days, eighty-six and 67/100 (86.67) hours every fifteen (15) days or one hundred fourteen (114) hours every twenty (20) day work period." Answer ¶19 (Doc. 13). The Defendant further admits that "the Plaintiffs and other similarly

---

[1] The words "officer" and "Plaintiff(s)"as used in this brief, unless otherwise indicated, shall mean all hourly, non-exempt law enforcement officers employed by the City of Norfolk, including all officers employed at the rank of sergeant and below, since October 11, 2009.

situated employees worked, and continued to work, regularly scheduled work hours which recur week after week." Answer ¶19 (Doc. 13). Defendants admit that Plaintiffs "have been and continue to be frequently assigned extra duties and non-recurring types of work assignments." Answer ¶19 (Doc. 13).

Plaintiffs and potential plaintiffs are "similarly situated" in their job duties and in the manner of compensation paid to all hourly NPD law enforcement officers who were employed by Defendant from the period beginning October 11, 2009 to the present. Winingear Dec. ¶6 (Ex. 1); Gibson Dec. ¶5 (Ex. 2); *see also* Answer ¶¶15, 17 (Doc. 13). Plaintiffs have worked as officers for Defendant for varying lengths of time, with some Plaintiffs having worked for NPD for literally decades. Winingear Dec. ¶7 (Ex. 1); Gibson Dec. ¶7 (Ex. 2). Defendant pays or paid all of its officers at the rank of sergeant and below on an hourly, non-exempt basis which is uniformly administered and essentially identical throughout the police department. Winingear Dec. ¶5 (Ex. 1); Gibson Dec. ¶4 (Ex. 2). Officers are or have been compensated at one and one half times their regular rate of pay for certain recorded overtime hours. However, Defendant failed and/or fails to pay overtime compensation for overtime hours accrued by virtue of "off-the-clock" hours which are worked but are not counted toward compensated time. Winingear Dec. ¶8 (Ex. 1); Gibson Dec. ¶9 (Ex. 2); Burns Dec. ¶6 (Ex. 3).

Plaintiffs and potential plaintiffs worked off-duty or "off-the-clock" hours which were not counted toward compensable time and for which the officers were not compensated at all. *Id.* The following type of work was performed by all classes of officers, including a minimum of 200 to 250 officers who have not yet joined this action, including patrol, detective, special units, traffic, etc. and resulted in overtime not being paid as required:

a)     Police officers subpoenaed for hearings beginning at 0900 in various courts would sometimes be directed on their respective subpoenas to arrive at 0830.  In many of these instances, the City of Norfolk Human Resources Department or police administration would deduct the half hour between 0830 and 0900 from the police officers' hours worked asserting that the officers' work did not begin until 0900, despite the officers being subpoenaed to appear, and actually appearing, at 0830.  *Id.*

b)     Officers were sometimes not paid for time spent waiting for and retrieving evidence on mornings of court testimony.  *Id.*

c)     Many Plaintiffs were provided City of Norfolk cell phones and "smart phones" and were required, and are currently required, to take calls and review and respond to e-mails, calls and texts that they receive from colleagues, supervisors, informants, witnesses, etc. during off-duty hours for which they are not paid.  *Id.*  This time is significant for those officers provided these devices ranging from 15 minutes to more than two hours per officer per week.  *Id.*  Many officers perform the same type of work on personal devices.  *Id.*

d)     Many of the Plaintiffs serve in an "on-call" capacity and have actually been called into work in off-duty hours only to be told, upon arrival, that their services are not needed and that they will not be paid.  Winingear Dec. ¶8 (Ex. 1); Gibson Dec. ¶9 (Ex. 2).

e)     Many of the Plaintiffs have served in an "on-call" capacity and their personal liberty is so restricted as to constitute time worked under applicable law and regulations.  Winingear Dec. ¶8 (Ex. 1); Gibson Dec. ¶9 (Ex. 2); Burns Dec. ¶6 (Ex. 3).

f)     The Plaintiffs were responsible for keeping their service weapons clean. This required many of them to clean and periodically "field-strip" their weapons during off-duty hours, a task for which they were improperly denied overtime compensation.  *Id.*

g)      Police officers were often not paid for break time worked in violation of the overtime provisions of both the FLSA and Va. Code §9.1-700, et seq.  *Id.*

h)      Police officers were often not paid their overtime premium to which they were entitled for special details such as Harborfest, charity/special events, parades, politician visits, etc.  *Id.*

The Fair Labor Standards Act and regulations promulgated by the United States Department of Labor, including 29 CFR §553.230, require that, as law enforcement employees, Plaintiffs receive overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of the hours listed below under the caption "Maximum Hours Standards".  Moreover, the Virginia gap time statute, Va. Code §9.1-703 et seq., requires that all hours worked or paid above the officers' regular recurrent schedules noted below under the caption "Gap Time Threshold" be paid at one and one-half times the officers' regular rate of pay. Generally, the common work periods used by the City of Norfolk results in the following gap time thresholds, maximum hour standards and "gaps" as noted below:

| WORK PERIOD (DAYS) | GAP TIME HOUR THRESHOLD (for Va. gap time O/T) | MAXIMUM HOUR STANDARDS (for FLSA O/T) | THE "GAP" (HOURS) |
|---|---|---|---|
| 28 | 160 | 171 | 11.00 (171 - 160) |
| 20 | 114 | 122 | 8.00 (122 – 114) |
| 15 | 86.67 | 92 | 5.33 (92 – 86.67) |
| 14 | 80 | 86 | 6.00 (86 – 80) |
| 7 | 40 | 43 | 3 (43 - 40) |

Winingear Dec. ¶9 (Ex. 1); Gibson Dec. ¶10 (Ex. 2).

Plaintiffs and potential plaintiffs have worked substantial hours in the "gap" identified above without being paid overtime compensation at one and one-half times their regular rate of pay in violation of the Virginia gap time statute. Winingear Dec. ¶10 (Ex. 1); Gibson Dec. ¶11 (Ex. 2); Burns Dec. ¶7 (Ex. 3).

It is important to note that of the time and payroll records reviewed thus far[2], other than the "off the clock" FLSA claims discussed above, there appears to be little or no dispute about hours actually worked, time actually paid and the rate at which time was actually paid for the Plaintiffs and potential plaintiffs. Winingear Dec. ¶11 (Ex. 1); Gibson Dec. ¶12 (Ex. 2); Burns Dec. ¶8 (Ex. 3). The Plaintiffs have developed a computer program which will render the calculation of the gap time owed a relatively easy and efficient process once the data is shared. *Id.; see also* Bennett Dec. ¶7 (Ex. 4).

The calculations and evaluations of the time owed to the police officers asserting these claims and the others similarly situated are essentially identical, differing only in their defined work periods (seven, fourteen, fifteen, twenty and twenty-eight days), their regular hourly rate of pay, their regular recurring work schedules (e.g., generally seven days/40 hours, fourteen days/80 hours, fifteen days/86.67 hours, twenty days/114 hours and twenty-eight days/160 hours) and the actual hours paid and worked. Winingear Dec. ¶12 (Ex. 1); Gibson Dec. ¶13 (Ex. 2); Bennett Dec. ¶7 (Ex. 4). The Plaintiffs all appear to have identical factual situations for purposes of Virginia gap time analysis with the only variables being those listed in the previous sentence. *Id.* In other words, there are no individualized factual questions for the gap time claims other than the variables of hours worked, regular hourly rate and regular recurring work schedules and

---

[2] The Plaintiffs are in possession of roughly comprehensive data sets for three officers (two patrol and one detective) and partial data sets, supplied by the Plaintiffs themselves, for several additional officers across all bureaus.

hours actually paid. *Id.* These are all variables for which the program developed by Plaintiffs, discussed above, will immediately, easily and readily provide full and complete resolution from electronically shared data. *Id.* Once this data is electronically transferred, the amounts owed to each officer under the Virginia gap time statute will be readily and easily calculated. *Id.* In this respect, the officers' claims could not be more typical or common as among themselves. *Id.*

Management level officers with the City of Norfolk Police Department are aware that officers regularly have performed work for the police department which has not been compensated properly, inappropriately compensated at straight time rates when overtime rates should have been paid and otherwise paid in violation of the FLSA and the Virginia gap time statute. Winingear Dec. ¶13 (Ex. 1); Gibson Dec. ¶14 (Ex. 2); Burns Dec. ¶8 (Ex. 3). There are at least 200 to 250 current and former Norfolk law enforcement officers eligible to receive the relief requested in this action who have not yet joined it. Winingear Dec. ¶16 (Ex. 1); Gibson Dec. ¶17 (Ex. 2); *see also* Defendant's Answer ¶6 (Doc. 13) (admission that Norfolk employs approximately 700 law enforcement officers). All of the similarly situated officers who have yet to join this action performed duties identical to numerous plaintiffs who have already opted into this action. *Id.*

The Attorney General of the Commonwealth of Virginia has notified Plaintiffs' counsel of his intent to intervene on behalf of the Plaintiffs' in pursuit of their Virginia gap time claims. *See* Email correspondence dated March 18, 2013 (Ex. 5).

## IV.    FLSA COLLECTIVE ACTION FRAMEWORK

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation "for and in behalf of himself or themselves and other employees who are similarly situated." 29 U.S.C. §216(b); *Hoffman-La Roche v. Sperling*, 493

U.S. 165, 169, (1989); *Shaffer v. Farm Fresh*, 966 F.2d 142, 147 (4th Cir. 1992). Under the FLSA's statutory framework, Plaintiffs must affirmatively "opt in" by giving written consent to join in the action as a party plaintiff. *Id.*

Federal courts apply a two-step analysis in determining whether plaintiffs are "similarly situated" so as to conduct the case as a collective action. *See Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). During the initial "notice stage," courts determine whether to provide initial notice of the case to the potential class members. *Id.* The standard for determining whether the potential plaintiffs are similarly situated at this stage is a "fairly lenient one." *Id.* During this initial "notice stage," the Supreme Court has instructed trial courts that it is appropriate to facilitate this notice by authorizing a notice for plaintiff's counsel to send to potential plaintiffs, by permitting plaintiff to discover the names and addresses of potential plaintiffs to facilitate such notice and/or by other appropriate action to facilitate the statutory collective action. *See Hoffman-La Roche,* 493 U.S. at 169-170.

An employee need only show that she is suing her employer for herself and on behalf of other employees "similarly situated" to warrant FLSA collective action treatment. *Bernard v. Household International, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). For an overtime case, the "similarly situated" standard is met where the class members share similar job requirements, pay provisions and geographic location of employment. *See, e.g., Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (N.D. Fla. 1994) *citing Dybach v. State of Florid Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). Plaintiffs' claims and job positions need not be identical to the potential "opt-in's," they need only be similar. *Id.*

Providing notice to potential plaintiffs in a collective action is necessary to serve the broad remedial purposes of wage recovery under the FLSA. The power of a trial court to give

notice to other potential class members of their right to "opt in" has been made clear by the Supreme Court so that courts may responsibly "oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-LaRoche,* 493 U.S. at 170-171. Court-authorized notice also protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently and expedites resolution of disputes. *Id.* at 170-172. Furthermore, "a trial court can better manage a [collective] action if it ascertains the contours of the action at the outset." *Id.*

Once the court makes the preliminary and "lenient" determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action subject only to subsequent decertification which results in the cases being tried individually or in small groups. *See Johnson v. TGF Precision Haircutters, Inc.*, 319 F. Supp. 2d 753, 755 (S.D. Tx. 2004). Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action procedure where the court evaluates conflicting evidence developed in discovery to test the validity of the preliminary "similarly situated" determination made at the notice stage. *Id.* Accordingly, allowing notice and full participation by the "opt-ins" "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988). When the notice and opt-in period is complete, the court will have the benefit of knowing the actual make-up and contours of the collective action.

# V.     RULE 23 CLASS ACTION FRAMEWORK

In order to proceed under a Fed. R. Civ. P. 23 class action, the Plaintiffs must satisfy the elements mandated under Fed. R. Civ. P. 23(a) of numerosity, commonality, typicality, and adequate representation and one element under Fed. R. Civ. P. 23(b) which are:  1) the danger of material inconsistencies or dispositive, binding adjudications on non-class members if class status is denied; 2) the party opposing the class has acted or refused to act in a manner that generally applies to the class so that final injunctive relief is appropriate for the class as a whole; or 3) questions of fact or law common to class members predominate over questions affecting only individual members and the class procedures are superior to other options.

"[C]ertification as a class action serves important public purposes." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).  The Fourth Circuit has held that federal courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility and application which will in a particular case serve the ends of justice for the affected parties . . . [and] promote judicial efficiency".  *Gunnells v. Healthplan Services, Inc.*, 348 F.3d at 424, quoting, *In re A.H. Robins,* 880 F.2d 709, 740 (4th Cir. 1989).  Accordingly, "any doubts about the propriety of certification should be resolved in favor of certification."  *In re Bearingpoint, Inc. SES. Litigation*, 232 F.R.D. 534, 537 (E.D. Va. 2006).  The "interests of justice require that any doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action."  *DeLoach v. Philip Morris Cos., Inc.*, 206 F.R.D. 551, 568 (M.D.N.C. 2002).  Rule 23 "instructs courts to determine whether or not to certify a class at 'an early practicable time'."  *In re Bearingpoint, Inc. Secs. Litigation*, 232 F.R.D. 534, 537 (E.D.Va. 2006).  A Rule 23 evidentiary hearing is not required for certification.  *DeLoach*, 206 F.R.D. at 553.

## A.    **The Elements Governing Rule 23(a):**

"The application of [the following Rule 23(a)] factors to a particular dispute is 'straightforward'." *Newsome*, 219 F.R.D. at 360 (quoting *Gunnells*, 348 F.3d at 425).

### 1.    **Numerosity.**

More than 40 potential plaintiffs have been held as satisfying "numerosity". *Newsome v. Up-to-Date Laundry*, 219 F.R.D. 235 (D.Md. 2004) at 360-361. In fact, "twenty-five or more" can suffice. *Jeffreys v. Communications Workers of America, AFL-CIO*, 212 F.R.D. 320 (E.D.Va. 2003) ("class members dispersed over numerous states"); *Talbott v. GC Servs., Ltd. P'ship*, 191 F.R.D. 99 (W.D.Va. 2000). Indeed, even 18 can be sufficient. *Cypress v. Newport News Gen.l & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). "The court may certify a class based on a common sense estimation of the class size if the precise number of class members is unknown". *Talbott*, 191 F.R.D at 102. A present inability to "specifically identify the proposed class members 'supports rather than bars the bringing of a class action'." *Id.* at 102-103.

### 2.    **Commonality.**

The "commonality standard is 'fairly easily met'" and is closely related to the typicality factor. *Fisher*, 217 F.R.D. at 223.

> [T]he commonality and typicality requirements do not 'require that members of the class have identical factual and legal claims in all respects'. *Broussard*, 155 F.3d 331, 344. Thus, 'the mere existence of individualized factual questions with respect to the class representatives' claim will not bar class certification.' *Gary Plastic*, 903 F.2d at 180. In sum, the premise of class certification is that due process requires the interests of the party representing a class to be substantially similar to those of the unrepresented parties. *Broussard*, 155 F.3d at 338.

*Bearingpoint*, 232 F.R.D. at 538.  The commonality requirement is generally met where the defendant has acted in a common way toward the class.  For example, "suits for injunctive relief by their very nature present common questions of law or fact." *Id.* at 224.

### 3.    Typicality.

Closely related to the commonality factor, the "typicality requirement goes to the heart of a representative party's ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements." *Deiter*, 436 F.3d at 466. "That is not to say that typicality requires that the plaintiffs' claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 467.  The named plaintiff must "simply 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart*, 255 F.3d 138 (citing *Falcon*, 457 U.S. at 156 (1982)); *Pitt*, 221 F.R.D. at 445. "The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical. *Broussard*, 155 F.3d at 344". *Fisher*, 217 F.R.D. at 212.

The class sharing a common legal "theory" is the linchpin. The "mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *Difelice v. U.S. Airways, Inc.*, No. 1:04cv889, 2006 U.S. Dist. LEXIS 15711, at *21 (E.D. Va. Mar. 22, 2006).  "'Factual differences among the class members' cases will not preclude class certification if the class members share the same legal theory'." *Lutz v. Int'l Ass'n of Machinists & Aerospace Workers, No. 00-148-A,*, 2000 U.S. Dist. LEXIS 18971, at *21 n. 8 (E.D. Va. Oct. 12, 2000).  Moreover, factual "variances in the amount of damages claimed, or differences in the availability of certain defenses against the representative plaintiffs, does not prohibit a finding of typicality as long as the claims are based on the same legal or remedial

theory." *Jeffreys*, 212 F.R.D. at 322. In *DeLoach*, sale of different tobacco at different locations by different sellers with different damages did not destroy "typicality," because "the claims of the class representative stem from the same facts and legal theories regarding the alleged price fixing conspiracy as those of the rest of the class". 206 F.R.D. at 555.

### 4.    Adequacy of Class Representation.

A determination must be made as to the general adequacy of class representation. The issue here is whether current class representative's interests, i.e., the current Plaintiffs, are aligned with the putative class. "The Supreme Court and this Court have long interpreted the adequate representation requirement of Rule 23(a)(4) to preclude class certification [where there 'is a conflict of interest between different groups' of class members]." *Broussard*, 155 F.3d at 337 (citing *Amchem*). However, even where "some adversity among members of the purported class does exist," that adversity can "be reconciled with Rule 23 without destroying the class entirely". *DeLoach*, 206 F.R.D. at 557. Core "issues override the differences of opinion among members of the purported class on [other issues]". *Id.* Strong commonality and typicality combined with lack of conflict of interest satisfies this standard. *Id.*

### B.    The Elements of Rule 23(b):

Only one subpart of Rule 23(b) "need be satisfied". *Talbott*, 191 F.R.D. at 105. If an action qualifies for class certification "under Rule 23(b)(1) and/or (b)(2), as well as (b)(3), then it should be certified under (b)(1) and/or (b)(2), but not under (b)(3)." *See In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989)." *Lutz*, 2000 U.S.Dist. LEXIS 18971 at *11-12. "Nevertheless, it is preferable additionally to determine whether certification is available under subsection (b)(3) in the event that certification under [(b)(1) or] (b)(2) proves inappropriate or unworkable." *Fisher*, 217 F.R.D. at 226. *Cf., Pitt*, 221 F.R.D. at 443.

Plaintiffs move for certification under subsection (b)(3) and follow with that standard and analysis. However, and though perhaps less clear, certification is appropriate under the other subsections as well. *See, e.g., Fisher*, 217 F.R.D. at 214 ("divided" or "composite" certification is sometimes appropriate). Accordingly as discussed, *infra*, alternate review is favored in the event the court does not agree that the predominance and superiority standards have been met.

### 1.    Predominance.

The inquiry with respect to the predominance standard "focuses on the issue of liability, and 'if the liability issue is common to the class, common questions are held to predominate over individual ones'." *Bearingpoint*, 232 F.R.D. at 534. Rule 23 and related case law does not suggest that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 plainly envisions class actions with individualized damage determinations. *Gunnells*, 348 F.3d at 427-428 (4th Cir. 2003); *Bearingpoint*, 232 F.R.D. at 542; *Pitt*, 221 F.R.D. at 446-447; s*ee also Fed. R. Civ. P. 23* advisory committee's note; 5 *Moore's Federal Practice* §23.23[2](1997)."

Even where "defendants argue that . . . the Court must engage in a series of individualized 'causation' inquiries," this Court "notes that a predominance inquiry should not be reduced to a quantitative inquiry." *Pitt*, 221 F.R.D. at 447. In *Talbott*, the Western District held that "predominance" was satisfied by the "standardized nature of [defendant's] conduct," *i.e.,* its practice of using "standardized documents," such that "common questions of law and fact surrounding the contents and mailing of these ['standardized documents'] predominate over individual issues":

> Here common questions predominate because of the standardized
> nature of [defendant's] conduct; namely the dunning letter and its
> FDCPA violation." Rule 23(b)(3) is normally satisfied where there
> is an essential common factual link, such as standardized documents

and practices. This is true even though the nature and amount of damages may differ among class members." "'Predominance' does not require the common questions to be dispositive, *see Chisolm*, 184 F.R.D. at 566, and is satisfied here because 'it is the use of standardized debt collection letters that have given rise to the plaintiff's claim. The questions of law and fact. . .relate to the use of the debt collection letters admittedly mailed by defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues'.

*Talbott,* 199 F.2d at 105-106.

## 2. Superiority.

"Efficiency is the primary focus to determine if a class action is the superior method to resolve a controversy, and the court looks to judicial integrity, convenience, and economy." *Bova v. Cox Commc'ns, Inc.,* No. 7:01cv00090*, 2001 U.S. Dist. LEXIS 206090 (W.D. Va. Dec. 12, 2001). *Fisher v. Va. Elec. & Power Co.*, No. 3:02cv431, 2003 U.S. Dist. LEXIS 14370 (E.D. Va. Aug. 12, 2003), 217 F.R.D. at 227. Otherwise, "the burden to the courts would be enormous, and the needless duplication would be extremely expensive for all parties." *DeLoach*, 206 F.R.D. at 567. "It is proper for the court to consider the 'inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Talbott*, 191 F.R.D. at 106.

## 3. Other Factors: Individuals, Suits Commenced, Forum & Management.

In determining the requirements of "predominance" and "superiority," Rule 23(b)(3) prescribes that the court consider the following factors:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability

> or undesirability of concentrating the litigation of the claims in the
> particular forum; (D) the difficulties likely to be encountered in
> the management of a class action.

*Pitt*, 221 F.R.D. at 445. For the first prong, "the Advisory Committee had dominantly in mind

vindication of the rights of groups of people who individually would be without effective

strength to bring their opponents into court at all." *Id.* (quoting *Amchem*, 521 U.S. at 616-617).

The most compelling rationale for finding superiority in a class action is the existence of material

and substantial efficiencies. *Id.* The significant "expense and complexity" of an action weigh in

favor of a class action. *DeLoach*, 206 F.R.D. at 557.

Singularity satisfies the second prong. "[T]he extent and nature of any litigation already

commenced is not a significant consideration where, like here, the 'case does not involve the

consolidation of separate suits'." *Pitt*, 221 F.R.D. at 446 (citing *DeLoach*, 206 F.R.D. at 557).

The third prong "is whether the forum chosen for the class action represents an

appropriate place to settle the controversy." *Id.* Clearly the District in which the misconduct

occurred, all injuries were suffered and most witnesses and documents reside is appropriate.

The manageability consideration is but one of the 'nonexhaustive list of factors pertinent

to a court's close look at the predominance and superiority criteria'." *Fisher*, 217 F.R.D. at 213.

Notably, "the Manual for Complex Litigation states that 'dismissal for management reasons, in

view of the public interest involved in class actions, should be the exception rather than the rule.'

The Manual continues with the comment that problems of administration alone ordinarily should

not justify denial of class certification unless the resources required to be devoted to such

administrative matters would frustrate the securing of the relief to which the class members may

be entitled." *DeLoach*, 206 F.R.D. at 567. "Manageability . . . 'thus should not be used to deny

certification in the face of novel challenges'." *Fisher*, 217 F.R.D. at 227. A court "should not decline to certify a class because it fears that insurmountable problems later appear." *Id.*

Perhaps most relevant in the present case, "in cases where damages were capable of mathematical calculation, 'the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability.' Plaintiffs have offered sufficient evidence of formulaic approaches to the calculation." *DeLoach*, 206 F.R.D. at 567. *Cf., Gunnells*, 348 F.3d at 427-428.

### 4.    "Tools": Subclasses, Bifurcation and Decertification.

"Though any case of such magnitude certainly poses problems of manageability, Federal Rules of Civil Procedure 23(c) and (d) provide the Court with tools to deal with them." *DeLoach*, 206 F.R.D. at 567. For example, a court can use "subclasses," *Id.*; *Pitt*, 221 F.R.D. at 448, 452; *Fisher*, 217 F.R.D. at 228; bifurcate and/or sever; *Pitt*, 221 F.R.D. at 447; use a "Special Master," *Id.* at 448; "alter or amend certification order," *Fisher*, 217 F.R.D. at 228; or decertify the class. *Id.*; *Pitt*, 221 F.R.D. at 448. "

### VI.    <u>ARGUMENT</u>

In *Rogers v. City of Richmond*, 851 F. Supp. 2d 983 (E.D. Va. 2012), Judge Hudson held that the FLSA and the Virginia gap time statute do not conflict, "[R]ather, the two can – and by definition, must – operate in tandem: where the state law's protections end, the federal law's protections begin." *Id.* at 986. To effect the full operation of these statutes "in tandem" the Plaintiffs' Motion for Conditional Collective Action Certification for the FLSA claims and Rule 23 Class Certification for the Virginia gap time claim should be granted. In evaluating this motion, it is critical to remember that the Virginia General Assembly passed the Virginia gap time statute in 2005. Norfolk police officers have been denied its benefits for seven years. Even

if full relief is granted as requested in this motion, the officers will only be permitted to recover for three of those seven years.

A.   **Central Commonality of Issues Presented Support Conditional Certification Under the FLSA and Rule 23 Class Status for the Gap Time Claims.**

It is critical to note that this is not the typical Fair Labor Standards Act case or state gap time claim where the issues of exempt status, non-exempt status or variance in job duties are at issue. It is clear from the admissions contained within Defendant's answer that nearly all of the "variance" and exempt/non-exempt disputes common to FLSA collective action cases are not at issue here. *See* Answer ¶¶15, 17-19 (Doc. 13). Accordingly, the typical arguments against certification are irrelevant to this case. This action presents uniform geographic scope, common pay practices and policies and plainly presents substantial interest from class and potential members. Because this case is, at its base, about mathematics, typical issues of eligibility, causation, entitlement, exempt versus non-exempt status simply do not exist. For purposes of this motion, these Plaintiffs and potential plaintiffs are not merely "similarly situated," they are exactly the same.

Three hundred nine (309) Norfolk law enforcement officers filed the original Complaint plainly alleging that they were "similarly situated" to other Norfolk law enforcement officers not named in the action. Nearly one hundred additional officers have since opted in. Norfolk cannot dispute that there are at least 200 to 250 officers who have not opted into this action and who are potentially entitled to the same level of relief as the present Plaintiffs. Clearly, there is significant interest on the part of all officers in this case. As of the current date, 398 officers have opted in and there is a steady stream of officers who learn of this action and who continue to opt-in. The most recent opt-in occurred the day before this motion was filed.

## B.    FLSA Conditional Certification and Notice Issuance is Appropriate.

It is well settled that the standard for determining whether the potential Plaintiffs are "similarly situated" at this stage is a "fairly lenient one" for FLSA collective action certification. *Choimbol*, 475 F. Supp. 2d at 562.  It is appropriate in this case to follow the Supreme Court's guidance instructing trial courts to facilitate notice, permitting the Plaintiff to discover the names and addresses of potential plaintiffs to effect such notice or take other appropriate action to facilitate the purposes of the collective action mechanism.  *Hoffman-LaRoche,* 493 U.S. at 169-170.

Giving full notice to all potential plaintiffs in this collective action is necessary to serve the broad remedial purposes of wage recovery under the FLSA.  The Plaintiffs have proffered a proposed Notice and Order, discussed *infra*, that will effectively and fairly inform other potential Plaintiffs of their rights in this action.  The Plaintiffs and potential plaintiffs in this action are all similarly situated.  They are employed as law enforcement officers tasked with keeping the peace, investigating crimes, protecting the citizens of Norfolk and engaging in law enforcement activities generally.  They are all paid hourly and are non-exempt.  They were paid in a uniform manner.  The FLSA off the clock violations were similar across all classes of officers.  This satisfies the similarly situated standard as set forth in the *Johnson, Bernard, Tucker* and *Dybach* cases cited, *supra.*  The FLSA motion for conditional certification of this collective action, with facilitated notice, should be granted.

## C.    Class Certification Under Rule 23 is Necessary and Just.

The Fourth Circuit has clearly held that Rule 23 should be given a liberal rather than a restrictive construction and applied with flexibility in order to serve the ends of justice. *Gunnells*, 348 F.3d at 424, *quoting*, *In re A.H. Robins,* 880 F.2d 709, 740 (4th Cir. 1989).  Doubts

about the propriety of certification generally must be resolved in favor of certification. *In re Bearingpoint, Inc. SES Litigation*, 232 F.R.D. at 537. If error is to be committed it "should be committed in favor of allowing a class action." *Deloach*, 206 F.R.D. at 568.

The only differing facts between Plaintiffs under the gap time claim are mathematical variables. It is clear that the current class representatives and the putative class share commonality and typicality. As discussed, *supra*, this is not a case about whether or not these officers are exempt, what their duties were, whether they managed people, etc. It is simply a question of the number of hours worked, the number of hours paid, what their schedules were and how much they were paid. These variables are all in the possession of the City of Norfolk. They are all readily available. Certification of this class will serve the "important public purpose" of seeing to it that law enforcement officers who put their lives on the line get the benefits that were intended to be conveyed to them by the Virginia General Assembly under the gap time statute nearly a decade ago.

The number of additional potential plaintiffs is at least 200 to 250. This plainly satisfies the "numerosity" requirement. As stated by the Western District in *Talbott*, "[T]he court may certify a class based on a common sense estimation of the class size if the precise number of class members is unknown. *Talbott*, 191 F.R.D. at 102. Moreover, a present inability to precisely identify the number of proposed class members "supports rather than bars the bringing of a class action." *Id* at 102-103.

Clearly, significant commonality and typicality exist in this case. These factors are closely related to adequacy of class representation. The members of the putative class who have not yet joined this action will fall into precisely the same categories of employees that already exist in this action. In other words, there is uniformity and indeed a significant level of

homogeneity between the existing Plaintiffs and the putative class. The adequacy of class representation standard is clearly met under the holdings set forth in the *Broussard* and *Deloach* cases discussed, *supra*.

The elements of Rule 23(b) are also clearly met. As noted previously, only one subpart of Rule 23(b) must be satisfied. *Talbott*, 191 F.R.D. at 105. Because this case is essentially about the number of hours worked, the number of hours paid and the recurrent hours of law enforcement officers, questions of law and fact common to the class will predominate over individual questions. While it is true that individual officers will have worked different numbers of hours and that their schedules may differ by class, the general issue of liability is common to the class and, as a result, common questions must be held to predominate over individual ones. *Bearingpoint*, 232 F.R.D. at 534. Simply because individualized damage determinations must be made is not a reason to deny class certification. *Gunnells*, 348 F.3d at 427-428.

It is clear from the rule in *Talbott* and similar cases that "predominance" is satisfied by the "standardized nature of [defendant's] conduct" and its use of standardized systems such that "common questions of law and fact" surrounding the case "predominate over individual issues." *Talbott*, 199 F.2d at 105-106. When assessing this issue the Court must look to "judicial integrity, convenience and economy." There is little question but that the efficiencies of bringing this case as a Rule 23 class action is superior to a multiplicity of individual actions.

If the Court does not agree that common issues are predominate over individualized factual determinations, it could still certify this case under Fed. R. Civ. P. 23(b)(1) & (2). Allowing the gap time claim to go forward in several different actions would create the risk of inconsistent or varying adjudications. It also creates the danger of adjudications that may be binding on other potential class members. It is also true that the City of Norfolk has "acted or

refused to act on grounds that apply generally to the class" so that declaratory relief, i.e., an order directing compliance with these statutes which has been requested in this case" be issued. All of these factors, by themselves, satisfy Fed. R. Civ. P. 23(b). It is also critical to note under the "predominant" standard of Fed. R. Civ. P. 23(b)(3) that individual class members may have a difficult time bringing this type of complex litigation by themselves. Moreover, the fact that a case has already been filed militates in favor of finding that the predominate factor obtains. It is clearly desirable to concentrate the litigation of the claims in a single forum. Finally, there would be no insurmountable difficulties in managing this class action. As noted previously, the Virginia gap time analysis is essentially a mathematical one. There are no issues of eligibility, exempt status, relevant variance between work tasks assigned or even causation in the classic sense. The only variables here are mathematic. Allowing a Rule 23 class in this action is appropriate as to Count II.

## VII.    RELIEF REQUESTED

The Plaintiffs request the following relief:

1)      that the Notice attached hereto as Exhibit 6 be issued to all Norfolk law enforcement officers who were non-exempt under the FLSA and/or paid by the hour for any work performed between October 10, 2009 and the present date;

2)      that the Court conditionally certify a collective action under the FLSA, 29 U.S.C. §216(b) for "all FLSA non-exempt and/or hourly law enforcement officers employed by the City of Norfolk between October 10, 2009 and the present date and who were improperly denied overtime pay under the FLSA;"

3)      that the Court certify a class pursuant to Fed. R. Civ. P. 23 of "all City of Norfolk law enforcement officers who performed any work for the City between October 10, 2009 and

the present date, who were non-exempt under the FLSA and/or paid by the hour and who were improperly denied overtime compensation under the Virginia gap time statute;"

4)      that the law firms of Patten, Wornom, Hatten & Diamonstein, L.C. and Richard J. Serpe, P.C., and counsel James H. Shoemaker, Jr., Richard J. Serpe, Cindra Dowd, Jason Messersmith and Patricia Melochick be appointed as class counsel; and

5)      that the Order attached hereto as Exhibit 7 defining the class, class claims and issues be entered.

## VIII.   CONCLUSION

The facts of this case applied to the legal standards governing conditional certification under the FLSA and Fed. R. Civ. P. 23 class certification for the Virginia gap time claims strongly militate in favor of granting the relief requested.

WHEREFORE, the Plaintiffs respectfully request that the relief requested herein be granted.

Respectfully submitted,

**WILLIAM KEITH WININGEAR, et al**

By:   _/s/ James H. Shoemaker, Jr._
                    Of Counsel

James H. Shoemaker, Jr., VSB No. 33148
Jason E. Messersmith, VSB No. 77075
Patricia A. Melochick, VSB No. 80694
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com
jmessersmith@pwhd.com
pmelochick@pwhd.com

Richard J. Serpe, VSB No. 33340
Cindra Dowd, VSB No. 33819
Law Offices of Richard J. Serpe, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, Virginia  23510-2322
Telephone:  (757) 233-0009
Facsimile:  (757) 233-0455
rserpe@serpefirm.com
cdowd@serpefirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 2nd day of October, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Andrew Fox
Office of the City Attorney
810 Union Street, Room 900
Norfolk, Virginia 23510
Telephone: (757) 664-4529
Facsimile:  (757) 664-4201
Andrew.fox@norfolk.gov

*/s/ James H. Shoemaker, Jr.*
James H. Shoemaker, Jr., VSB No. 33148
Jason E. Messersmith, VSB No. 77075
Patricia A. Melochick, VSB No. 80694
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com
jmessersmith@pwhd.com
pmelochick@pwhd.com
