IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILLIAM KEITH WININGEAR, ET AL

        Plaintiff,

v.                                        Civil Action No. 2:12cv560

CITY OF NORFOLK, VIRGINIA,

        Defendant.

## OPINION AND ORDER

This matter came before the Court on the Parties' Joint Motion for Approval of their Settlement Agreement and for Dismissal of Plaintiffs' Case with Prejudice, Doc. 130, and Plaintiffs' Motion for Attorney's Fees and Costs and for Approval of Distribution, Doc. 135. A hearing was held on July 8, 2014. The Court **GRANTED** the Motions, and now issues this Opinion and Order, explaining its ruling.

    I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action for unpaid overtime compensation brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq. and Virginia Code § 9.1-700, et seq. Plaintiffs are law enforcement officers currently or formerly employed by Defendant City of Norfolk ("City" or "Defendant"). Plaintiffs allege that they did not receive overtime compensation for hours worked in excess of their regularly scheduled hours, nor did they receive any form of compensation (including overtime compensation) for required work that was completed "off-the-clock" or off-duty ("OTC work" or "OTC claim").

The Complaint in the instant Action was filed on October 11, 2012. Doc. 1. Since then, the parties filed a number of pretrial motions. On February 3, 2014, the Court entered an Order

1

certifying a class action under Federal Rule of Civil Procedure 23 on the state law claim, and conditionally certifying a collective action on the FLSA claim. Doc. 90. The parties were able to reach a settlement agreement, and the parties moved the Court to approve their settlement on May 15, 2014. Doc. 130.

The settlement agreement provides for a total fund of $3,200,000. Doc. 132 ¶ 6. $1,121,775.00 covers the Virginia state law claim; $847,975.00 covers the FLSA claim; and $1,230,250.00 covers the Plaintiffs' attorney's fees and costs. Id. ¶¶ 6–9. The agreement contains a release barring any subsequent claims for back wages. Id. ¶¶ 12; 15.

By Order dated June 4, 2014, the Court granted preliminary approval of the settlement, and certified the FLSA collective action for purposes of settlement only. Doc. 133. The Court ordered the parties to provide a detailed explanation of how they arrived at the settlement figure, the formula used to determine what each Plaintiff will receive from the settlement proceeds, a complete breakdown of the time and billing rates to assess the attorney's fees, and to send notice to the class members of the settlement, including the option of opting out of the settlement and the procedure for filing objections to the settlement. Doc. 133 at 4. Plaintiffs filed a supplemental memorandum on July 2, 2014. Doc. 134. Plaintiffs submitted their Motion for Attorney Fees and Costs and for Approval of Distribution on July 7, 2014. Doc. 135.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement of a class action lawsuit, and further requires that class members receive notice of the settlement before the court approves it. Furthermore, the FLSA also requires court-approval of settlements. Patel v. Barot, No. 4:13cv59, 2014 WL 1624001, at *4 (E.D. Va. April 23, 2014). The factors

governing court approval of settlements under Rule 23 and the FLSA are similar. Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009).

Courts generally follow a two-step procedure for approving class action settlements. Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994). First, the Court conducts a preliminary review of the proposed settlement to determine if it "'is within the range of possible approval,' or in other words, whether there is 'probable cause' to notify the class of the proposed settlement." Id. (quoting Armstrong v. Bd. of Sch. Dirs., 616 F.2d 305, 312 (7th Cir. 1980)). Once the Court grants preliminary approval and notice is sent to the class, the Court conducts a fairness hearing to determine if the proposed settlement is "'fair, reasonable, and adequate.'" Horton, 855 F. Supp. at 827 (quoting Armstrong, 616 F.2d at 314).

In making this determination that a settlement is fair, the court considers:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

Lomascolo, 2009 WL 3094955, at *10 (citing Flinn v. FMC Corp., 528 F.2d 1169, 1173–74 (4th Cir. 1975)); see also Patel, 2014 WL 1624001, at *6 (applying the same factors in approving a FLSA settlement). The settlement of a FLSA case requires that the Court find that the "'settlement proposed by an employer and employees ... is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Patel, 2014 WL 1624001, at *4 (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)).

Furthermore, in determining whether a settlement is adequate, the Court should consider:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991).

### III. ANALYSIS

The parties argued that their settlement should be approved because it satisfied the above stated factors. Doc. 131 at 4–5. The Court agreed, and **FOUND** that the settlement was a fair and reasonable resolution of a bona fide FLSA dispute and that the settlement was fair and adequate as required under Federal Rule of Civil Procedure 23(e).

#### a. Extent Discovery Has Taken Place

When discovery has been largely completed, this factor weighs in favor of approving the settlement. In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 254 (E.D. Va. 2009). Discovery began on May 10, 2013, and did not conclude until February 12, 2014. Doc. 131 at 6. The parties retained experts to assist them in the process, and proceeded to take twenty-nine depositions. Id. Thus, this factor weighed heavily in favor of settlement.

#### b. The Stage of the Proceedings

When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." Mills Corp., 265 F.R.D. at 254. Several such briefs and motions were filed in this case. The Court previously denied Defendant's Motion to Dismiss, Motion for Summary Judgment, and Motion to Certify a Question of Law to the Supreme Court of Virginia. Doc. 131 at 7. Additionally, filed before the parties settled, and still pending before the Court, is Defendant's Motion to Sever and Decertify Collective Action. Doc. 116. The settlement terms

were reached after mediation before The Honorable F. Bradford Stillman, Ret., which occurred just weeks before trial was scheduled to commence. Thus, this factor also weighed heavily in favor of settlement.

### c. Absence of Fraud or Collusion

In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred. Lomascolo, 2009 WL 3094955 at *12. The parties took three months between their mediation before Judge Stillman and filing their Motion for Settlement Approval. Doc. 131 at 8. The Plaintiffs' Steering Committee engaged in thorough debate before agreeing to the settlement. Id. Thus, no evidence exists to suggest the settlement was procured by fraud, and accordingly this factor favored settlement.

### d. Experience of Counsel

Counsel for Plaintiffs and Defendant are competent litigators experienced in federal and employment litigation. Plaintiffs' lead counsel is James H. Shoemaker; additional counsel are David R. Simonsen, Jr., Cindra P. Dowd, Richard J. Serpe, and O.L. Gilbert. Each have represented other clients in FLSA collective actions before this Court. Thus, this factor weighed in favor of settlement as well.

### e. Opinion of Class Counsel and Class Members

"While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement." Flinn, 528 F.2d at 1173. As discussed above, class counsel has experience in federal court and employment litigation. Their opinion is entitled to weight.

Furthermore, the opinion of class members is a factor to consider in assessing the fairness and the adequacy of the settlement. Jiffy Lube, 927 F.2d at 159; Lomascolo, 2009 WL 3094955,

at *10. The opinion of class members concerning the settlement "'is perhaps the most significant factor to be weighed in considering its adequacy.'" In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (quoting Sala v. Nat'l R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989)). The Court should consider both the number of opt-outs and the number of objections, compared to the number of class members. MicroStrategy, Inc., 148 F. Supp. 2d at 667–68. Considering that no objections to this settlement were filed, this factor weighed heavily in favor of settlement as well.

### f. Probability of Success and the Likely Amount of Recovery

This factor is of the utmost importance, "because 'if the settlement offer was grossly inadequate ... it can be adequate only in light of the strength of the case presented by the plaintiffs." Mills Corp., 265 F.R.D. at 256 (quoting Flinn, 528 F.2d at 1172). There is no question that the parties vigorously asserted their claims before the Court to show that the settlement is the result of a bona fide dispute. The parties dispute whether the plaintiffs would have been victorious at trial. In a similar case before the Richmond Division, this Court found that the Virginia minimum wage law was not preempted by the FLSA. Rogers v. City of Richmond, Va., 851 F. Supp. 2d 983 (E.D. Va. 2012). Thus, on the state law claim as presently postured, the Plaintiffs stood a good chance of recovery.[1]

However, Defendant asserted strong defenses to the OTC claims. Defendant argued that Plaintiffs did not have strong proof of their alleged unpaid overtime, that Defendant could show good faith and rebut any allegations of willfulness, and that it could use set-offs against any due overtime compensation. Doc. 131 at 11. The difficulty to show willful behavior is one factor the Court can properly consider in weighing the probability of success on the merits. Domonoske v. Bank of America, N.A., 790 F. Supp. 2d 466, 474 (W.D. Va. 2011).

---

[1] The Court previously rejected Defendant's Motion for Summary Judgment, citing Rogers. Doc. 90 at 5.

The Plaintiffs' supplemental memorandum explains in detail the process by which they valued their case. First, regarding willfulness on the gap-time between the FLSA and Virginia statute, Plaintiffs argue that Defendant had a strong defense; the City procured the opinion of outside counsel who advised it that its payroll policies complied with the FLSA and Virginia statute. Doc. 134 at 2–3. Second, regarding willfulness on the OTC claim, each officer certified in writing that their reported time was accurate, supervisors were unaware of any work occurring off the clock, and the Eleventh Circuit had approved of a set-off defense that Defendant planned to assert. Id. at 5–6.

Regarding the valuation of the Virginia law claim, Plaintiffs present that a best case scenario, assuming Defendant's conduct was found to be willful, was a recovery of $3,376,238.74. Id. at 4. Another factor Plaintiffs considered was that Defendant had filed a Motion to Decertify, which could "have placed the value of the complete claim in material doubt." Id. The amount Plaintiffs have recovered on this claim is $1,209,294.05, or approximately 93% that could have been recovered without a finding of good faith. Id. Counsel also noted that this was the major issue in the case, and that the OTC claims were only brought as a secondary course of action. Id. at 5.

Regarding the OTC claims, 553 officers asserted such claims. Id. A major problem with these claims (besides those mentioned above), was the fact that there was little to no documentation, and Plaintiffs were forced to recall the amount of time from memory. Id. at 5–6. Class counsel or their paralegals interviewed each officer individually, and found that the trial Plaintiffs could assert approximately one hour per week in OTC. Id. at 6. Thus, their projected best case recovery was $2,750,000, not including willfulness, consisting of an average of one hour worked per week, average overtime wage of $34.50, and the number of weeks in the two-

year statute of limitations. Id. at 6–7. However, if the Eleventh Circuit's set-off defense had been adopted by the Court, the City would have been credited with two-and-a-half hours per week for compensating officers for their meal breaks. This would have precluded recovery for many of the officers.

The settlement provides for $739,109 in payments for the OTC claims. Id. at 7–8. To calculate the amount paid to each officer, the officer was placed into one of twelve tiers based on the number of hours claimed. Id. at 7. Each tier was then given a median figure, and each officer within the tier is compensated according to this median figure. Id.

Each officer who participated in the suit was given a minimum recovery of $200 if they worked in the gap-time as alleged in the Virginia law claim and at least $220 if they worked any amount in the OTC claim. Id. at 8–9. Additionally, each member of the steering committee was given an additional $250, and lead Plaintiff Keith Winingear was given an additional $1,750 as compensation for their investment of time and resources in the case.[2] Id. at 9. The maximum amount any officer will receive under the settlement is $12,546.30. Doc. 134-2 at 7. Finally, in the event of any data errors (which Plaintiffs do not believe are significant, but are related more to computer system errors regarding officers with similar names) or unanticipated costs, a $10,000 reserve fund has been set aside to account for any such errors. Doc. 135 at 3. In the event that this fund is not needed, it will be disbursed to the officers on a pro-rata basis according to the portion of each officer's recovery.

Given the amount of the recovery combined with the obstacles faced by Plaintiffs to affect their best case recovery, the amount of the settlement is fair and adequate. As such, this factor weighed in favor of approving the settlement.

---

[2] Courts have approved such additional compensation in other cases. See Helmick v. Columbia Gas Transmission, No. 2:07cv743, 2010 WL 2671506, at *3 (S.D.W. Va. July 1, 2010) (approving a $50,000 incentive award for the lead plaintiff, noting that such "awards are routinely approved in class actions[.]").

### g. Anticipated Duration and Additional Expenses of Litigation

This factor requires "the Court to weigh the settlement in consideration of the substantial time and expense litigation of this sort would entail if a settlement was not reached." Mills Corp., 265 F.R.D. at 256. A trial in this matter would be complex; it was anticipated to last three weeks. In addition to the pending motion to decertify the collective action, Defendant represents that it would have filed five additional dispositive motions. Doc. 131 at 8. Furthermore, the parties assert they would have pursued various post-trial motions and appeals. Id. After sixteen months of litigation and the numerous motions argued by the parties, it is clear that the parties would incur a large amount of further expenses had they not reached this settlement agreement. Thus, this factor also weighed in favor of settlement.

### h. Solvency of Defendant and Likelihood of Recovery on a Judgment

Courts considering this factor look at whether the defendant can satisfy a case judgment. In re Montgomery Cnty. Real Estate Antitrust Litig., 83 F.R.D. 305, 317 (D. Md. 1979). However, a defendant need not be bankrupt; trial is inherently risky, and a settlement properly discounts the amount of recovery given this inherent risk. Mills Corp., 265 F.R.D. at 257. Plaintiffs worked with Defendant to have the settlement filed so that it would be applied in the current fiscal year, assisting with the City's budgetary constraints. This factor did not weigh against settlement.

### i. Attorney's Fees

In a FLSA action and an action under the Virginia state law equivalent, an award of attorney's fees is appropriate. 29 U.S.C. § 216(b); Va. Code. § 9.1-704. The settlement provides for Plaintiffs' counsel to receive $1,230,250 for fees and costs. Doc. 132 at 4. $1,120,000 of this

is for fees, and the remaining amount is for costs. Doc. 131 at 15. The fee portion amounts to 35% of the gross settlement pool. Doc. 135 at 5.

The award of attorney's fees is determined by first establishing the "lodestar" amount, derived from "a 'reasonable hourly rate multiplied by hours reasonably expended.'" Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344, 2013 WL 1897027, at *6 (E.D. Va. Apr. 12, 2013) (quoting Grissom v. The Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008). Once it makes the lodestar determination, the Court looks at the twelve Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), factors to assess reasonableness:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). There is no strict manner in applying and considering these factors. Trimper v. City of Norfolk, 846 F. Supp. 1295, 1303 (E.D. Va. 1994).

After reviewing class counsel's submissions, the Court **ADOPTS** the proposed lodestar fee of $699,148.75 for 2,422.45 professional hours expended. Affidavits from two local employment law attorneys were submitted stating that the fees and hours charged are reasonable. Docs. 135-2 & 135-3. After reviewing the itemized billing entries, the Court **FOUND** that the charges were reasonable and no actions were taken to needlessly inflate the lodestar figure. However, counsel was obtained on a contingent fee basis, and because the contingent fee amount is higher than the lodestar figure, the Court considered whether the higher contingent fee award

was also reasonable, see Lyle v. Food Lion, Inc., 954 F.2d 984, 989 (4th Cir. 1992) (holding that the district court may depart upward if it does so on a clearly explained, principled basis), and **FOUND** the requested fee award to be reasonable.

Concerning the first Johnson factor, Plaintiffs asserted that a team of attorneys and paralegals have spent 2,422.45 hours working on this case, for a market value of $699,148.75 as of June 30, 2014.[3] Doc. 135 at 11. This is a composite average figure of approximately $312/hour between the attorneys and paralegals. See Gregory v. Belfor USA Grop., Inc., No. 2:12cv11, 2014 WL 468923, at *5 (E.D. Va. Feb. 4, 2014) (averaging fees between partners, associates, and paralegals). Additionally, $103,974.24 in costs and expenses have been advanced in support of this litigation. Id. The parties have submitted affidavits from non-affiliated employment litigators in this district asserting that the charged fees are reasonable. At the outset, under the sixth factor, Plaintiffs signed contingency fee arrangements agreeing for 40% of the recovery, thus Plaintiff's counsel is seeking a reduced percentage of the recovery. Regarding the twelfth factor, this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery.

Regarding the second, third, and ninth factors, researching the working hours of the officers required extensive discovery and researching the law on potentially applicable exemptions. Additionally, the fact that so many issues were presented by the parties and the experience of counsel show that a large amount of skill was necessary to properly litigate this lawsuit. Class counsel has an excellent reputation in the legal community, as discussed above.

Additionally, the eighth factor also supports the reasonableness of the requested fee award. The officers will be receiving an average award of over $2,000 from the settlement fund,

---

[3] This does not include the most recent time-entries which would most likely have also been appropriately considered by the Court in arriving at the lodestar figure.

with a gross award approaching $2 million excluding fees and costs. Doc. 135 at 9. Given the size of the class, this is a substantially positive outcome.

Regarding the fourth and seventh factors, the amount of hours this case required forced the attorneys to forego other opportunities and thus supports the fee award. Id. at 7. Furthermore, class counsel argued that the local rules short time table places a larger burden on smaller firms, and thus also supported the award in this case. Id. at 8.

### IV. CONCLUSION

Accordingly, the Court **GRANTED** the Motions, Docs. 130 & 135. This action is **DISMISSED WITH PREJUDICE**, but the Court retains jurisdiction to enforce the settlement. Defendant is **ORDERED** to disburse funds in conformance with the agreement by July 28, 2014. The Court **ORDERS** the parties to submit a report concerning the disbursement of the reserve fund within 134 days of the entry of this Opinion and Order. It is further **ORDERED** that Defendant's Motion to Sever and Decertify Collective Action is dismissed as moot.

The Clerk is **REQUESTED** to electronically send a copy of this Order to all counsel of record, and to terminate all pending motions.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: July 14, 2014